# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELYSE UNRATH | : | CIVIL ACTION NO. |
| | : | 02-CV-3191 |
| | : | |
| Plaintiff, | : | |
| V. | : | |
| | : | |
| STEAK AND ALE OF PENNSYLVANIA, INC. | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant | : | |

## ORDER

AND NOW, this _____ day of _____, 2003, it is hereby ordered that defendant Steak and Ale of Pennsylvania, Inc.'s Motion for Summary Judgment is granted and judgment is entered in favor of Steak and Ale of Pennsylvania, Inc. and against plaintiff on all counts.

BY THE COURT:

_____

J.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELYSE UNRATH | : | CIVIL ACTION NO. |
| | : | 02-CV-3191 |
| | : | |
| Plaintiff, | : | |
| V. | : | |
| | : | |
| STEAK AND ALE OF PENNSYLVANIA, INC. | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant | : | |

## MOTION FOR SUMMARY JUDGMENT OF
## DEFENDANT, STEAK AND ALE OF PENNSYLVANIA, INC.

Defendant, Steak and Ale of Pennsylvania, Inc. ("Steak and Ale"), by its attorneys, Daller Greenberg & Dietrich, LLP, hereby moves for summary judgment and in support thereof avers as follows:

1.     On May 15, 2000, plaintiff, Elyse Unrath, was a customer of the Bennigan's Grill & Tavern ("Bennigan's"), operated by Steak and Ale and located at 2231 Cottman Avenue, Philadelphia, Pennsylvania.

2.     Plaintiff alleges she sustained injuries when she slipped and fell due to a wet floor at the Bennigan's. See plaintiff's Complaint attached hereto as Exhibit "A."

3.     Plaintiff alleges that Steak and Ale was negligent in that it: (a) caused and permitted the floor to become and remain wet, creating a hazardous and dangerous condition; (b) failed to adequately maintain the area where she fell; (c) failed to warn of the dangerous condition; (d) failed to adequately inspect the area where she fell; and (e) failed to adequately correct the defective and unsafe condition. See plaintiff's Complaint,

paragraph 12; plaintiff's Response to defendant's First Set of Interrogatories attached hereto as Exhibit "B," paragraph 7.

4.    Plaintiff claims that while she was on the floor, she touched the floor with her right hand and noticed it was wet. See transcript of the deposition testimony of Elyse Unrath at Pp. 49-50, attached hereto as Exhibit "C."

5.    At no time, however, did plaintiff actually see that the floor was wet. See Unrath dep. tr. Pp. 49-50.

6.    Plaintiff claims that following the fall, her pants were wet in the area of her right buttocks. See Unrath dep. tr. Pp. 52-53.

7.    Plaintiff admits that she has no knowledge as to how long the floor had been wet prior to her fall. See Unrath dep. tr. P. 55.

8.    Plaintiff did not see tracking or footprints on the floor and does not know what type of liquid was on the floor. See Unrath dep. tr. P. 55.

9.    Plaintiff admits that she does not know how the floor was caused to be wet. See Unrath dep. tr. Pp. 55-56.

10.    Thus, plaintiff has offered no competent evidence as to: (a) who or what caused the floor to be wet; (b) how long the floor had been wet before she fell; and (c) whether Steak and Ale had notice, either actual or constructive, that the floor was wet. See Unrath dep. tr. Pp. 55-56.

WHEREFORE, as more fully discussed in the accompanying Memorandum of Law, Steak and Ale of Pennsylvania, Inc. respectfully requests that summary judgment be entered in its favor.

DALLER GREENBERG & DIETRICH, LLP

By:_____

    Gerhard P. Dietrich
    Eight Tower Bridge
    161 Washington Street, Suite 900
    Conshohocken, PA  19428
    (215) 836-1100

    Attorneys for Defendant,
    Steak and Ale of Pennsylvania, Inc.

March 3, 2003

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| ELYSE UNRATH | : | |
| | : | CIVIL ACTION NO. |
| | : | 02-CV-3191 |
| | : | |
| Plaintiff, | : | |
| V. | : | |
| | : | |
| STEAK AND ALE OF PENNSYLVANIA, INC. | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, STEAK AND ALE
OF PENNSYLVANIA, INC.'S MOTION FOR SUMMARY JUDGMENT**

**I.     STATEMENT OF FACTS**

Plaintiff, Elyse Unrath, claims that she was injured on May 15, 2000 when she slipped and fell on a wet floor inside a Bennigan's Grill & Tavern operated by Steak and Ale of Pennsylvania, Inc. ("Steak and Ale"). Discovery ended on December 6, 2002. Prior to the expiration of this deadline, seven (7) witnesses, including the plaintiff, were deposed. Plaintiff, however, has failed to elicit evidence to show: (1) that Steak and Ale or its employees knew that the floor was wet; (2) how the floor became wet; or (3) how long the floor had been wet prior to her fall. In short, there is no evidence to support a conclusion that the defendant or its employees had actual or constructive notice of the alleged condition. Therefore, plaintiff's negligence case against Steak and Ale must fail.

## II.    ARGUMENT

### A.    The Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  Summary judgment is mandated where, "after adequate time for discovery, and upon motion, ... a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[2]

On a motion for summary judgment, the moving party has the initial burden of either identifying evidence which it believes shows an absence of a genuine issue of material fact *or* demonstrating the absence of evidence to support the non-moving party's case.[3]  The burden then shifts to the non-moving party, which must go beyond the pleadings and designate *specific facts* showing that there is a genuine issue for trial.[4]  A motion for summary judgment is not defeated by the demonstration of *any* disputed issue of fact.  Rather, the court must be presented with a genuine issue of *material* fact, and it is the substantive law applicable to the plaintiffs' claim that determines which facts are material.[5]

---

[1]  Fed. R. Civ. P. 56(e).
[2]  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324-25 (1986).
[3]  *Id.* at 324-25 (1986); *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir. 1988).
[4]  *Celotex,* 477 U.S. at 324.
[5]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Although the non-moving party is entitled to the benefit of all reasonable doubts and inferences that may arise in connection with the consideration of the motion,[6] "a party resisting a motion for summary judgment must come forward with more than speculation in order to raise a genuine issue of material fact."[7]  Moreover, when the non-moving party bears the burden of proof, it must "make a showing sufficient to establish the existence of [every] element essential to that party's case."[8]  Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to a judgment as a matter of law.[9]  Accordingly, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]

### B.    Substantive Law: The Notice Requirement

Under Pennsylvania law, a storeowner owes a duty of care to the patrons of his store.[11]  This duty is set forth in the Restatement (Second) of Torts, §343.[12]  A storeowner is not, however, an insurer of the safety of his customers.[13]  Moreover, the mere happening of an accident as a result of a transitory condition in a public place is not evidence of negligence and does not raise a presumption of negligence.[14]  Rather, to support a finding of liability, an invitee must present some evidence that tends to prove

---

[6]  *Harold Freeman, Inc. v. Thoroughfare Market, Inc.,* 587 F.2d 127 (3d Cir. 1978).

[7]  *Keystone Data Systems, Inc. v. James F. Wield, Inc.,* 549 F. Supp. 790, 792 (E.D. Pa. 1982).

[8]  *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,* 812 F.2d 141, 144 (3d Cir. 1987) (quoting *Celotex,* 477 U.S. at 322).

[9]  *Ashford v. Skiles,* 837 F. Supp. 108, 112 (E.D. Pa. 1993) (quoting *Celotex,* 477 U.S. at 323).

[10]  *Celotex,* 477 U.S. at 322.

[11]  *Myers v. Penn Traffic Co.,* 414 Pa. Super. 181, 184, 606 A.2d 926, 928 (1992).

[12]  *Martino v. Great Atlantic & Pacific Tea Co.,* 419 Pa. 229, 233, 213 A.2d 608, 610 (1965); *Swift v. Northeastern Hosp. of Philadelphia,* 456 Pa. Super. 330, 335, 690 A.2d 719, 722 (1997).

[13]  *Myers,* 414 Pa. Super. at 184-85, 606 A.2d at 928.

[14]  *Moultrey v. Great Atlantic & Pacific Tea Co.,* 281 Pa. Super. 525, 530, 422 A.2d 593, 596 (1980).

that either the proprietor of the land had a hand in creating the dangerous condition or

that the proprietor knew, or in the exercise of reasonable care ought to have known, of the

existence of the dangerous condition.[15]

Thus, an essential element in a cause of action for negligence brought by an

invitee is proof of either actual or constructive notice of a dangerous condition on the part

of the possessor of land. Constructive notice arises when the condition is shown to have

existed "for such a length of time that in the exercise of reasonable care the owner should

have known of it."[16] To establish constructive notice, the plaintiff must provide evidence

to show *how long* the condition was in existence prior to the time of the plaintiff's

accident.[17] Further, the evidence presented must be competent such that one could

reasonably find, *without speculation or conjecture*, that the defendant had constructive

notice of the dangerous condition and failed to exercise reasonable care.[18]

Following these principles, Pennsylvania courts have consistently granted

summary judgment against plaintiffs who failed to prove either that the proprietor of the

premises had a hand in creating the transitory condition, or that he had actual or

constructive notice of such condition.[19] To illustrate, in *Meyers v. Penn Traffic Co.* the

---

[15] *Id.*

[16] *Flocco v. Super Fresh Markets, Inc.*, 1998 WL 961971,*2 (E.D. Pa. 1998) (citing *Moultrey*, 281 Pa. Super. at 529, 422 A.2d at 596).

[17] *Id.* (citing *Martino*, 419 Pa. at 234, 213 A.2d at 610 (non-suit appropriate where plaintiffs presented no evidence to establish how long grape had been on floor); *Swift*, 456 Pa. Super. at 336, 690 A.2d at 722 (summary judgment appropriate where plaintiff failed to offer proof as to how long water was on floor)); *De Tore v. Great Atlantic and Pacific Tea Co.*, 411 F.2d 613, 614 (3d Cir. 1969) (dismissal proper where plaintiff failed to offer evidence as to how long water or other substance was on floor).

[18] *Id.* at *3; *Inverso v. Bob's Country Deli and Fine Foods*, 20 Pa. D.&C.4th 404, 407 (1993) (citing *Martino*, 419 Pa. at 234, 213 A.2d at 610 ("[t]here is no evidence from which the jury might reach a conclusion as to the cause of the presence of the grape in the aisle, and jurors may not be permitted to reach conclusions based upon guess or conjecture).

[19] *Swift*, 456 Pa. Super. at 336, 690 A.2d at 722-723; *Myers*, 414 Pa. Super. at 193, 606 A.2d at 932; *Moultrey*, 281 Pa. Super. at 535, 422 A.2d at 597; *D'Aprile v. Rolling Hill Hosp.*, 1995 WL 908206 * 3, 28 Pa. D & C 4th 430, 433 (Pa.Com.Pl. 1995), *affirmed* 454 Pa. Super. 688, 685 A.2d 216 (1996), *appeal denied* 547 Pa. 716, 688 A.2d 172 (1997).

plaintiff alleged that she slipped on either a grape or an accumulation of wax in the produce aisle of a supermarket.[20]  The defendant filed a motion for summary judgment alleging that there was no evidence that the condition was created by a store employee, no evidence that the store had notice of the condition, and no evidence as to how long the condition existed before plaintiff's accident.[21]  The trial court granted the motion, finding that there was no evidence as to the cause of the grape on the floor and, in addition, negligence could not be established by the fact that produce frequently fell to the floor.[22]

In affirming the trial court's entry of summary judgment, the Superior Court relied upon its prior decision in *Moultry v. Great Atlantic & Pacific Tea Co.*[23] and the Pennsylvania Supreme Court's holding in *Martino v. Great Atlantic & Pacific Tea Co.*,[24] both of which involved plaintiffs who slipped on produce.  In *Martino*, the evidence showed that grapes were displayed by the defendant supermarket in a loose or unpackaged condition on a counter near the area where plaintiff fell.[25]  Customers of the supermarket carried grapes across the aisle to a scale for weighing and pricing.[26] According to testimony by defendant's employee, grapes often fell to the floor in the area where plaintiff fell.[27]

The *Martino* court agreed with the court below that the plaintiff fell as the result of slipping on a grape.[28]  However, the question presented was whether the presence of

[20] 414 Pa. Super at 184, 606 A.2d at 928.
[21] *Id.*
[22] *Id.*
[23] 281 Pa. Super. 525, 422 A.2d 593.
[24] 419 Pa. 229, 213 A.2d 608.
[25] *Id.* at 232, 213 A.2d at 609.
[26] *Id.*
[27] *Id.*
[28] *Id.*

5

the grape on the floor imposed liability on the defendant.[29]  The Supreme Court held that this alone was not enough to result in a finding of liability because "the mere happening of an accident does not impose liability on any party.  The negligence of the defendant in a trespass action must be proven by direct or circumstantial evidence."[30]  Furthermore, "the mere presence of such refuse, as described, does not in itself show negligence, for this condition may temporarily arise in any store of this character, though the proprietor has exercised due care."[31]  The *Martino* court went on to provide specific guidance as to what the plaintiff had to prove before she could recover:  "Appellant's burden was to prove . . . that appellee was aware that grapes and other refuse were on the floor and made no efforts to remove them."[32]  Because the plaintiff failed to offer evidence as to the cause of the grape on the floor, plaintiff failed to meet this burden of proof.[33]

This issue of notice was recently addressed by the United States District Court for the Eastern District of Pennsylvania in *Evans v. Canteen Corporation*.[34]  In *Evans*, the plaintiff slipped and fell on a puddle of milk in a cafeteria operated by the defendant.[35]  The defendant moved for summary judgment alleging there was no evidence that the defendant caused the milk to be spilled, that the defendant knew of the spill, or that the milk was on the floor for a sufficient time to give the defendant constructive notice of the spill.[36]  The *Evans* court examined whether there was any evidence of footprints or "tracking" through and around the area of the spill.[37]  Having found no such evidence, the

---

[29] *Id.*
[30] *Id.* at 233, 213 A.2d at 610.
[31] *Id.* at 233-234, 213 A.2d at 610 (quoting *Markman v. Bell Stores Co.*, 285 Pa. 378, 132 A. 178 (1926)).
[32] *Id.* at 233, 213 A.2d at 610.
[33] *Id.* at 234, 213 A.2d at 610.
[34] 1995 WL 355231 (E.D. Pa. 1995).
[35] *Id.* at *1.
[36] *Id.*
[37] *Id.* at *2.

6

court concluded that the defendant did not have constructive notice of the condition, and granted the motion for summary judgment.[38]

Similarly, in *De Tore v. Great Atlantic & Pacific Tea Co.*, the Third Circuit Court of Appeals affirmed the decision of the United States District Court for the Eastern District of Pennsylvania dismissing the plaintiff's slip and fall case.[39] There, the plaintiff claimed she was caused to slip and fall on a puddle of water in defendant's supermarket.[40] As proof of the puddle, plaintiff offered evidence that water was observed on the floor near where she fell, that the back of her dress was damp after the fall, and that one of her shoes had a muddy appearance and it had vegetable matter adhered to its insole.[41] The court, however, rejected plaintiff's claim holding that she failed to offer evidence sufficient to infer constructive notice on the part of the defendant.[42] Specifically, the plaintiff failed to offer evidence showing that the water or other substance which allegedly caused plaintiff to fall had been on the floor "long enough for a reasonably careful and observant proprietor to have discovered and removed it."[43]

In the instant case, plaintiff does not allege that Steak and Ale or its employees either created the alleged defective condition or had actual notice of the alleged defective condition. Thus, to make out her negligence claim, plaintiff must demonstrate that Steak and Ale had constructive notice of the condition – an element that plaintiff has not, and cannot prove. Here, as in *De Tore*, plaintiff simply alleges that the floor was "wet." She

---

[38] *Id.* at *3.
[39] *De Tore v. Great Atlantic & Pacific Tea Co.*, 411 F.2d 613, 614 (3d Cir. 1969).
[40] *Id.* at 614.
[41] *Id.*
[42] *Id.*
[43] *Id.*

does not know what type of liquid was on the floor, and she does not offer evidence to show from where the liquid came. As in *Evans*, plaintiff has presented no evidence of tracking or footprints in the liquid. Most importantly, however, plaintiff has failed to offer any evidence as to how long the floor was wet prior to the time she fell. Therefore, plaintiff has not offered any evidence from which to draw the inference that the floor was wet for a sufficient amount of time so as to give Steak and Ale constructive notice of the condition. Thus, she has failed to meet her burden of proof.

It is anticipated that plaintiff will try to overcome this defect in her evidence by alleging that the area of the restaurant in which she fell was more susceptible to spills because it was near a wait-station where drinks were refilled and, therefore, Steak and Ale had constructive notice. A similar argument was made by the plaintiffs in *Martino* and rejected by the Pennsylvania Supreme Court. There, plaintiffs called as a witness a supermarket employee whose testimony was summarized by the court as follows:

> From his experience, he stated lettuce leaves, grapes and cherries tended to fall on the floor with more frequency than other items although other things such as bottles or jams and jellies, oranges, etc., also occasionally fell to the floor. He testified grapes had fallen from the counter on numerous occasions and customers would either step on them or carts would be rolled over them and there would be black stains left on the floor of the store. He stated these stains were present on the floor by the counter where the grapes were displayed on many occasions during 1960 and until the accident in 1961. One of his duties was to keep the produce area clear of debris and he was under instructions when he was in the area if he saw anything on the floor to remove it and he did keep the floor clean. He also swept the floor and the floor was mopped.[44]

---

[44] *Martino*, 419 Pa. at 232, 213 A.2d at 609.

Based on this testimony, the plaintiffs argued that the manner and location in which the grapes were displayed constituted negligence.[45] The *Martino* court rejected this argument holding that there was no evidence presented from which the jury could, without guess or conjecture, reach a conclusion as to the cause of the grape in the aisle.[46] Furthermore, the court held that the location of the grape display in the store did not, in and of itself, constitute negligence because every reasonable effort was made to keep the aisle clean.[47]

Here, a wait-station is located on the side of the restaurant where plaintiff fell. The wait-station is used as a place to refill drinks. However, as in *Martino*, there is no evidence from which a jury could, without guess or conjecture, reach a conclusion as to the cause of the wet floor. Moreover, any spills within the restaurant, including the wait-station, were quickly cleaned by the nearest employee.[48] Indeed, plaintiff admitted in her deposition that she frequented the Bennigan's Grill & Tavern in question and that the restaurant was generally well-maintained.[49] Thus, reasonable efforts were taken to ensure that the area in and around the wait-station was kept clean.

## C. Summary Judgment Must Be Granted Against Ms. Unrath

In the instant case, the discovery deadline set by this Court has passed and there has been adequate time for plaintiff to discover evidence necessary to support her claim of negligence. As essential elements of her case, plaintiff must prove that there was a

---

[45] *Id.* at 234, 213 A.2d at 610.

[46] *Id.*

[47] *Id.*

[48] A fact that was confirmed by a former Steak and Ale employee. See transcript of deposition testimony of Lauren Ingalls at Pp. 14-15, attached hereto as Exhibit "D."

[49] See transcript of deposition testimony of Elyse Unrath at Pp. 42-43, attached hereto as Exhibit "C."

defective condition (i.e. liquid on the floor) and that Steak and Ale had notice of the condition. Plaintiff does not contend that Steak and Ale, or any of its employees, created the alleged condition or had actual notice of the condition. Rather, plaintiff relies on circumstantial evidence to establish that Steak and Ale had constructive notice. However, plaintiff has failed to offer any competent evidence that would permit a factfinder, without speculation or conjecture, to find that Steak and Ale had constructive notice that the floor was wet.

Plaintiff offers her own testimony that she noticed the floor was wet when she touched it with her right hand. She also claims that the back of her pants were wet after the fall. Plaintiff admits, however, that she did not actually see any liquid on the floor and she did not see tracking or footprints on the floor.

Whether taken individually or as a whole, these bits of evidence cannot establish constructive notice on the part of Steak and Ale because such evidence does not demonstrate how long the floor was wet prior to the time of plaintiff's fall. Indeed, plaintiff admits that she has no knowledge as to how long prior to her fall the floor was wet. Thus, because plaintiff has not, and cannot, offer a scintilla of evidence to prove that Steak and Ale had notice of the alleged defect, Steak and Ale is entitled to judgment as a matter of law.

## III.  CONCLUSION

Plaintiff has no evidence that defendant either created the allegedly dangerous condition or had notice of it.  Accordingly, summary judgment should be entered in favor of defendant and against plaintiff.

DALLER GREENBERG & DIETRICH, LLP

By:_____
Gerhard P. Dietrich
Eight Tower Bridge
161 Washington Street, Suite 900
Conshohocken, PA  19428
(215) 836-1100

Attorneys for Defendant,
Steak and Ale of Pennsylvania, Inc.

March 3, 2003

11

## CERTIFICATE OF SERVICE

I, Gerhard P. Dietrich, Esquire, hereby certify that a true and correct copy of the

foregoing Motion for Summary Judgment of Defendant Steak and Ale of Pennsylvania,

Inc. was served by first-class United States mail, postage prepaid, as follows:

> Michael F. McCartin, Esquire
> Murray L. Greenfield & Associates
> 9636 Bustleton Avenue
> Philadelphia, PA  19115

_____
Gerhard P. Dietrich


Date:   March 3, 2003

Exhibit A

Court of Common Pleas of Philadelphia County
Trial Division
# Civil Cover Sheet

*(For Prothonotary's Use Only (Docket Number))*

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Elyse Unrath | Steak and Ale of Pennsylvania, Inc. d/b/a Bennigan's Grill and Tavern |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 828 Red Lion Road,  Apt. E-14 Philadelphia, PA  19115 | 2231 Cottman Avenue Philadelphia, PA  19149 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | [X] Complaint    [ ] Petition Action    [ ] Notice of Appeal [ ] Writ of Summons    [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS |
|---|---|
| [ ] $50,000.00 or less [X] More than $50,000.00 | [ ] Arbitration    [ ] Mass Tort    [ ] Commerce    [ ] Settlement [X] Jury    [ ] Savings Action    [ ] Minor Court Appeal    [ ] Minors [ ] Non-Jury    [ ] Petition    [ ] Statutory Appeals    [ ] W/D/Survival [ ] Other: |

**CASE TYPE AND CODE (SEE INSTRUCTIONS)**

2S Premises Liability - Slip and Fall

**STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)**


| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| None | Yes    No [ ]    [ ] [ ]    [ ] [ ]    [ ] |

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Murray L. Greenfield, Esq. | 9636 Bustleton Avenue Philadelphia, PA  19115 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| 215-677-5300 | 215-677-8625 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 33103 | |

| SIGNATURE | DATE |
|---|---|
| | 4/1/~ |

TIME STAMP

ATTEST
APR 1 7 2002
D. SAVAGE

JURY FEE PAID

**MURRAY L. GREENFIELD & ASSOCIATES**
BY:  Murray L. Greenfield, Esquire
      Michael F. McCartin, Esquire
ATTORNEY ID 38103/59562
9636 Bustleton Avenue
Philadelphia, PA 19115
(215) 677-5300

ATTORNEY FOR:  **PLAINTIFF**

**ASSESSMENT OF DAMAGES HEARING:**
☒ IS        ☐ IS NOT REQUIRED
☒ Jury      ☐ Non-jury ☐ Arbitration

ELYSE UNRATH
828 Red Lion Road,  Apt E-14
Philadelphia, PA  19115

JURY FEE PAID

v.

STEAK AND ALE OF PENNSYLVANIA,
INC  d/b/a BENNIGAN'S GRILL AND
TAVERN
2231 Cottman Avenue
Philadelphia, PA  19149

*COURT OF COMMON PLEAS*
*PHILADELPHIA COUNTY*

TRIAL DIVISION

APRIL 2002 TERM
NO.

**002707**

**CIVIL ACTION: (Negligence)**
**2S Premises Liability – Slip and Fall**

JURY FEE PAID

## NOTICE

You have been sued in court. If you wish to defend against
the  claims set forth in the following pages, you must take
action within twenty (20) days after this complaint and notice
are served, by entering a written appearance personally or by
attorney and filing in writing with the court your defenses or
objections to the claims set forth against you.  You are
warned that if you fail to do so the case may proceed without
you and a judgment may be entered against you by the court
without further notice for any money claimed in the
complaint or for  any other claim or relief requested by the
plaintiff.  You may lose money or property or other rights
important to you.

"YOU SHOULD TAKE THIS PAPER TO YOUR
LAWYER AT ONCE.  IF YOU DO NOT HAVE A
LAWYER OR CANNOT AFFORD ONE, GO TO OR
TELEPHONE THE OFFICE SET FORTH BELOW TO
FIND OUT WHERE YOU CAN GET LEGAL HELP".

    Lawyer Referral and Information Service
    Philadelphia Bar Association
    One Reading Center
    Philadelphia, PA 19107
    (215) 238-1701

## *AVISO

Le han demandado a usted en la corte.  Si usted quiere
defenderse de estas demandas expuestas en las paginas
siguientes, usted tiene veinte (20) dias de plazo al partir
de la fecha de la demanda y la notificacion.  Hace falta
asentar una comparencia escrita o en persona o con un
abogado y entregar a la corte en forma tomara medidas y
puede continuar la demanda en contra suya sin previo
aviso o notificacion.  Ademas, la corte puede decidar a
favor del demandante y requiere que usted cumpla con
todas las provisiones de esta demanda.  Usted puede
perder dinero o sus propiedades u  otros derechos
importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO
IMMEDITAMENTE. SI NO TIENE ABOGADO O SI
NO TIENE EL DINERO SUFICIENTE DE PAGAR
TAL SERVICIO. VAYA EN PERSONA O LLAME
POR TELEFONO A LA OFICINA CUYA DIRECCION
SE  ENCUENTRA  ESCRITA  ABAJO  PARA
AVERIGUAR DONDE SE PUEDE CONSEGUIR
ASISTENCIA LEGAL.

    Asociancion De Licenciados DeFildelfia
    Servicio De Referencia E Informacion Legal
    One Reading Center
    Filadelfia, Pennsylvania 19107
    (215) 236-1701

## COMPLAINT

1. Plaintiff, Elyse Unrath is an adult individual residing at the above-captioned address.

2. Defendant, Steak and Ale of Pennsylvania, Inc., d/b/a Bennigan's Grill and Tavern (hereinafter referred to as "Bennigan's"), is a corporation duly organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, doing business in the County of Philadelphia, with business offices and a retail store located at the above-captioned address.

3. At all times hereinafter mentioned, Defendant, "Bennigan's," through their duly authorized agents, servants, workmen and/or employees, was a tenant and/or owner of the store located at 2231 Cottman Avenue, Philadelphia, Pennsylvania.

4. At all times hereinafter mentioned, Defendant, "Bennigan's," had the duty as tenant and/or owner of the above-mentioned property to keep and maintain the restaurant area in a reasonably safe condition for public travel thereon.

5. At all times hereinafter mentioned, Defendant, "Bennigan's," had under their care and direction, individually and/or through their agents, servants, workmen and/or employees, control and maintenance of the aforesaid property.

## COUNT I
## ELYSE UNRATH V. BENNIGAN'S

6. Paragraphs 1 through 5 of the Complaint are incorporated herein by reference as though same were set forth fully at length.

7. On or about May 15, 2000, there existed upon the aforementioned premises certain defects with other obstruction and impediments to safe public travel.

8.  The aforesaid latent and patent defects had existed prior to the aforesaid accident upon which this action arises.

9.  Defendant, Bennigan's, should and could have had, knowledge of the existence of the aforesaid defective condition.

10.  Plaintiff, Elyse Unrath, avers that prior to this occurrence, she had no notice or knowledge of the existence of the said defects and that said defects were a menace to safe public travel.

11.  On or about the aforesaid date, Plaintiff, Elyse Unrath, was lawfully and properly upon the aforementioned premises when she was caused to trip, slip and fall, causing injuries, losses and damages hereinafter described.

12.  Defendant, Bennigan's, by and through its authorized agents, servants, workmen, and/or employees, was careless, reckless and negligent in:

   a.  causing and/or permitting the aforesaid area to become and remain defective and unsafe;

   b.  failing to properly and adequately maintain the aforesaid area;

   c.  failing to properly and adequately warn the Plaintiff of the dangerous conditions then and there existing;

   d.  failing to properly and adequately inspect the said area to ascertain the existence of dangerous and unsafe conditions therein;

   e.  causing and/or permitting unsafe conditions to become and remain in the said area;

   f.  failing to properly and adequately correct the defective and unsafe conditions of the area; and,

g. failing to use that degree of care owed to Plaintiff under the circumstances.

13. Solely as a result of the negligence, carelessness and recklessness of the Defendant, Plaintiff, Elyse Unrath sustained serious injuries to her body, including but not limited to a spiral fracture of the mid shaft of the humerus of the left arm, surgery of the left arm including open reduction and internal fixation of the left humerus with a thirteen (13) hole plate, impairment of the left radial muscles and triceps, arm pain, rectal bleeding from pain medications, inability to sleep, low self esteem and a seven (7) inch scar , the extent of which is not yet known; which injuries have prevented her and may continue to prevent her from attending to her daily and usual duties and occupations; all of which injuries and conditions are, or may be permanent  in nature.

14. Solely as a result of the negligence, carelessness and recklessness of Defendant as aforesaid, Plaintiff, Elyse Unrath, has been obliged to expend various sums of money for medicine, medical attention and other assistance in and about endeavoring to treat, cure and care for herself due to the aforesaid injuries, all of which may continue in the future, to her great detriment and loss.

15. The treatment of Plaintiff includes, but is not limited, to the following:

| | |
|---|---:|
| a. Dr. David Cautilli | $1,356.15 |
| b. Nazareth Hospital | $567.23 |
| c. Dr. George Weber | $830.00 |
| d. Dr. David Bozentka | To be supplied |
| e. Presbyterian Medical Center | To be supplied |
| f. Dr. Allen Richmond | To be supplied |
| g. Moss Rehabilitation Hospital | To be supplied |
| h. Dr. Nathan Schatz | To be supplied |
| i. Lafayette Hill Medical Center | To be supplied |
| j. Quest Diagnostics | To be supplied |

16.    As a direct result of her injuries Plaintiff, Elyse Unrath was caused to miss eleven (11) weeks of work at the rate of approximately $1,069.59 per week and out of pocket expenses in the amount of $2,196.95.

17.  Further, as a direct result of her injuries, Plaintiff, Elyse Unrath, may have suffered a permanent loss of earnings, and may continue to suffer from a permanent impairment of her earning power and capacity.

WHEREFORE, Plaintiff, Elyse Unrath, demands judgment against Defendant, in an amount in excess of Fifty Thousand Dollars ($50,000.00) plus costs and interest.

MURRAY L. GREENFIELD & ASSOCIATES

By:    MURRAY L. GREENFIELD, ESQUIRE
       MICHAEL F. McCARTIN, ESQUIRE
       Attorney for Plaintiff

## VERIFICATION

I, Elyse Unrath, verify that the statements made in this pleading are true and correct. I understand that false statements herein are made subject to the penalties of 18 PA.C.S. §4904 relating to unsworn falsification to authorities.

ELYSE UNRATH

Date: 4/1/02

Exhibit B

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELYSE UNRATH

v.

STEAK AND ALE OF          CIVIL ACTION NO. 02-CV-3191
PENNSYLVANIA, INC d/b/a
BENNIGAN'S GRILL AND TAVERN

## PLAINTIFF'S RESPONSES TO FIRST SET OF INTERROGATORIES OF DEFENDANT STEAK AND ALE OF PENNSYLVANIA, INC. d/b/a BENNIGAN'S GRILL AND TAVERN

1.      Elyse Unrath, 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, Philadelphia, PA. My present resident address is 828 Red Lion Road, Apt. E-14, Philadelphia, PA 19115. Spouse, Carl, married for 20 years, married on 9/19/76 in Philadelphia. Prior residence 1207 Stirling Street, Philadelphia, PA 19111

2.      High School – Northeast High, I attended Penn State Mont Alto and graduated from Glassboro University with a B.A. in elementary education. I also have 36 graduate credits or a Master's equivalency for teaching in the School District of Philadelphia.

3.      School District of Philadelphia from approximately 1986 to present. Prior to that I worked at the Oxford Community Jewish Center Nursery from 1985 through 1986.

4.      No.

5.      No.

6.      Defendant negligently permitted the floor to become and remain wet. As I was walking to the rest room, I was caused to slip and fall due to the wet conditions on the floor.

7.      Defendant negligently permitted and caused the floor to become and remain wet creating a hazardous and dangerous condition.

8.      Yes. I took photographs of my scar. Copies of the photographs have been forwarded in Plaintiff's Self-Executing Disclosure.

9.      Defendant, myself, Ms. Debbie Rubinski Mark Fralin, Craig Glickman , my mother, Natalie Friedland and my sons Patrick and Tim as well as unknown employees of Defendant. See statements forwarded in Self-Executing Disclosure.

Exhibit C

Elyse Unrath                              42

1        Cottman?

2                    THE WITNESS:  Looking, yeah, towards

3        Cottman.

4    BY MR. DIETRICH:

5    Q.    While you were seated at the table did you see

6    anybody spill anything?

7    A.    No.

8    Q.    Did you see anybody clean the floor anywhere?

9    A.    No.

10   Q.    You didn't see anybody mopping?

11   A.    No.

12   Q.    When you came in and you walked over towards

13   the table initially --

14   A.    Yes.

15   Q.    -- did you notice whether or not the

16   restaurant seemed to be reasonably well-maintained?

17   A.    Yes.

18   Q.    It appeared to be clean to you?

19   A.    Yes.  That's why I liked going there.

20   Q.    You'd been there before?

21   A.    Yes.

22   Q.    On a number of occasions?

23   A.    Yes.

24   Q.    And it was always a pleasant experience for

Elyse Unrath                        43

1   you?

2   A.   Yes.

3   Q.   You always got good food and the employees

4   were courteous to you and the environment was

5   clean?

6   A.   I miss their food, yes.

7   Q.   I don't actually think there's any prohibition

8   about you going and eating at Bennigan's, but --

9   A.   Never.

10  Q.   -- anyway . . .

11         Okay.  So you get up now and you're going

12  to head back to the restroom.

13         You're going to go alone?

14  A.   Oh, yes.

15  Q.   And you start to walk back towards the

16  restroom, and what happens?

17  A.   I know I was walking here (indicating).

18  Here's where I was walking, and, like, right here,

19  like, right around here (indicating) --

20              MR. McCARTIN:  Indicating where?

21              THE WITNESS:  I'm sorry.  What does

22      it -- I can't see it.  I don't have my reading

23      glasses with me.

24              MR. McCARTIN:  Wait station.

Elyse Unrath

1          it.

2     BY MR. DIETRICH:

3     Q.    I'm trying to understand how you felt that it

4     was wet, because if you were barefoot and you

5     stepped on it I would understand how you felt it

6     was wet, but when you have on a rubber-soled shoe,

7     unless -- it'd have to go in through the rubber.

8               So how did you know it was wet?

9     A.    I felt my foot slip.

10    Q.    Okay.  So it was because your foot slipped

11    that you deduced that the floor was wet?

12    A.    It was wet.

13    Q.    How do you know it was wet?

14    A.    Because my foot slipped on something that was

15    wet.  There was something -- it was wet on that

16    floor.

17    Q.    Okay.  Other than slipping is there any other

18    reason why you believe the floor was wet?

19    A.    I felt the floor when I fell.

20    Q.    With what?

21    A.    My -- my right hand.  I didn't know -- with my

22    right hand.

23    Q.    Okay.  So after you fell did you feel around

24    with your right hand and try to figure, jeez, what

Elyse Unrath                                    50

1   caused me to slip and fall?

2   A.   Yes.

3   Q.   And what did you feel?

4   A.   It felt, like, wet.  It felt wet.

5   Q.   Sticky wet?

6   A.   Just wet.

7   Q.   Just wet.

8   A.   I don't know if it was sticky wet.  I mean, I

9   was pretty much in pain by that point.

10  Q.   Did you look at what you were feeling with

11  your hand?

12  A.   No, I did not.

13  Q.   So you felt it with your hand but you didn't

14  actually visualize it?

15  A.   Yes.

16  Q.   Okay.  So other than touching it with your

17  hand and feeling that your foot slipped out from

18  underneath you is there any other reason that you

19  believe the floor was wet?

20  A.   Well, when I -- when I fell there was a

21  waitress there, and she said they just -- they

22  moved the mat.  They just took away the mat.  And

23  so that kind of gave me the impression that she was

24  worried about something.  She was very upset.

Elyse Unrath

1   That's what I heard.

2   Q.    After you fall, you're on the ground, did you

3   notice whether or not your clothes were wet?

4   A.    My pants were wet.

5   Q.    Where were your pants wet?

6   A.    Here (indicating), under my right cheek.

7   Q.    So under your right buttocks cheek?

8   A.    Yes.

9   Q.    Anywhere else?

10  A.    Not that I remember.

11  Q.    And at any point afterwards or while you were

12  there did you notice whether or not your pants were

13  wet, whether it was stained or dirty or discolored?

14  A.    I don't know.  I couldn't move.  I don't

15  remember.  I knew I had -- they told me to take --

16  someone told me to take my jacket off.

17  Q.    At some point you cleaned the pants, right, or

18  someone cleaned the pants?

19  A.    Yeah.  I could have, I'm sure.

20  Q.    Were you able to wear those pants again?

21  A.    I don't remember.

22  Q.    You don't have a recollection that the pants

23  were somehow ruined because they were stained as a

24  result of what happened?

Elyse Unrath

53

1   A.   If they were a pant that I had before I wore

2   pants that closed with a zipper and a button, and

3   since I could no longer do that for myself I know

4   that I probably never really looked at them again.

5          For some reason I did keep the shoes, but

6   I don't remember what I did with the clothes.  I

7   just know that everything I have has to be elastic

8   now and since then.

9   Q.   Do you think that you still have the same pair

10   of pants or not?

11   A.   I don't really think I have them or -- I don't

12   know.  I don't think so.

13   Q.   But at least no one ever told you, boy,

14   there's a big spot or stain on your pants?

15          MR. McCARTIN:  Object to the form.

16       You can answer.

17          THE WITNESS:  Pardon me?

18          MR. McCARTIN:  You can answer.

19          THE WITNESS:  Okay.

20   A.   Say it again?

21   BY MR. DIETRICH:

22   Q.   Okay.  I'll rephrase the question.

23          You don't have any basis for believing

24   that there was a stain or a spot on the pants

Elyse Unrath                          55

1  A.    I was worrying about my arm.  I don't

2  remember.

3  Q.    Did you see whether or not there was any

4  tracking or footprints or anything else on the

5  floor?

6  A.    I didn't look.  I didn't feel anything.  I was

7  in pain.  I don't remember.

8  Q.    Do you know what the liquid substance was that

9  was on the floor?

10  A.    No, I do not.

11  Q.    Do you have any way of knowing how long the

12  liquid substance had been on the floor before you

13  fell?

14  A.    No.

15  Q.    Do you know anyone else that you believe knows

16  the answer to that question?

17  A.    I -- maybe the people at Bennigan's.

18  Q.    You're guessing at that?

19  A.    I assume the waitresses might have known.  I

20  don't know.

21  Q.    But you don't know for a fact anyone who said

22  to you, jeez, I know what the problem was?

23  A.    I was almost unconscious on the floor.  I

24  don't remember much after I fell, and the little

Elyse Unrath

56

1    thing with the waitress and then realizing I was

2    really hurt.

3    Q.    Other than hearing the waitress make this

4    statement did you speak to anyone at the Bennigan's

5    who was employed there that evening after you fell?

6    A.    I don't remember.

7    Q.    Do you have any way of knowing whether or not

8    anyone who was employed at the Bennigan's knew that

9    the floor was wet before you fell on it?

10   A.    I don't know that.

11   Q.    You don't have any recollection of any

12   conversation with the manager on the evening of the

13   incident?

14   A.    No.

15   Q.    Do you know how long you were on the floor

16   before you were moved?

17   A.    No, I don't.

18   Q.    But you do recall at some point they moved you

19   over to a bench?

20   A.    I really don't remember that.

21   Q.    You don't even remember that.

22          Do you remember the EMT people coming?

23   A.    Vaguely.  Vaguely remember.

24   Q.    Do you have --

Exhibit D

LAUREN INGALLS                                      14

1   Q.     Would it be fair to say that the mats

2   were placed there in front of the wait station

3   because of the possibility of spills happening

4   when the drinks and so forth were brought out

5   of the wait station?

6   A.     I would say that's a fair statement.

7   Q.     Do you ever recall there being water on

8   the floor or on the mats in front of the wait

9   station when you worked there?

10  A.     Not very much.  Our bus boys were pretty

11  good about keeping things clean, and we had a

12  yellow sign, if something broke, we had a lot

13  of team effort there, so we would instantly

14  run over and put something over it and take

15  care of it, but usually things were quickly

16  taken care of in our restaurant.

17         I certainly don't remember every

18  spill, how many spills there were, or if I

19  dropped a coffee cup or whatever.

20  Q.     Who would put the yellow signs out if

21  there was a spill or anything?

22  A.     Any one of us would do that.  I think

23  it's supposed to be the busboy's job, but,

24  again, we kind of worked together.  So if

<u>LAUREN INGALLS</u>

15

1   there wasn't a busboy nearby, one of us would

2   run over and grab something.

3   Q.     When I was trying to contact you about

4   giving a deposition you had called me back and

5   forth a couple times and you left a message on

6   the machine here at work and you indicated to

7   me that that area back by the wait station

8   frequently would have, not frequently, but was

9   susceptible to having water on the floor

10  because of the people coming out of the wait

11  station serving drinks.  Is that true?

12  A.     Susceptible, yes, I don't think it had

13  it there all the time, but, again, because it

14  has liquid in the station, it could

15  definitely, that could be a possibility, sure

16  but it wasn't -- it wasn't often enough that I

17  would remember that much of it being a

18  problem.

19         I just know that it -- sure, it

20  could happen, because it's a wait station and

21  it has lots of liquids in it.

22  Q.     I also thought that your message on the

23  machine said that sometimes you would tell

24  patrons to be careful walking back there?